IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF OHIO
WESTERN DIVISION

Tammy Green,                                                    Case No. 3:06CV01867

               Plaintiff

      v.                                                       ORDER

R.R. Donnelley & Sons Co.,

               Defendant

This is a suit under the Americans With Disabilities Act, 42 U.S.C. § 12102 *et seq* [ADA] and its cognate state law provision, O.R.C. § 4112, *et seq* and the Family Medical Leave Act, 29 U.S.C. § 2612 *et seq* [FMLA]. The plaintiff, Tammy Green, claims that her former employer, defendant R.R. Donnelley & Sons Co., fired her in violation of those statutes.

Pending is the defendant's motion for summary judgment. For the reasons that follow, the motion shall be granted.

## Background

Plaintiff had worked for the defendant since 1985 and as a sewer in defendant's bindery since 1991. That position involves constant standing and walking to fill the machine, clear jams and pile sewn books on a pallet. A "Physical Demands Assessment" notes that this position requires constant walking and standing and occasional lifting of up to 50 pounds.

Plaintiff has degenerative disc disease, which caused her to become unable to do the standing and lifting required to perform her job as a sewer. Due to that condition, she began a leave of absence on December 1, 2003, after her doctor, Ajay Chawla, M.D., had provided an "Excuse Slip" dated November 26, 2003. That slip asked the defendant to excuse plaintiff from November 23 to

December 24, 2003. The doctor checked a "from" box marked "work" and a "due to" box marked "injury." He submitted other slips at approximately monthly intervals until the following September. [Doc. 33, Exh. 9].[1]

The next slip, dated February 18, 2004, noted "Awaiting Insurance Approval for Treatment." Plaintiff wrote on the slip dated March 24, 2004, that she was "having the nuecleoplasty done on 4-1-04 so hopefully this will work." The doctor wrote on a slip dated April 21, 2004, "still awaiting treatment for R[ight] leg pain – off work through 6/3/04." and released her to return to work, subject to the restriction that she not lift more than twenty pounds.

The first slip to contain a specific limitation was captioned "Return to Work" and dated May 2, 2004; it described plaintiff's condition as "chronic back pain" and stated "no lifting [greater than] 20 lbs. limit standing to 10 [or 30][2] minutes at a time." The plaintiff added a note to that slip that indicated she had an appointment with a doctor on June 23, 2004, at the Cleveland Clinic, but didn't know when she would have a "rehab" appointment.

The next slip, dated July 19, 2004, referred to plaintiff's condition as "radiculopathy," and restricted her to walking not more than twenty minutes and sitting jobs with fifteen minutes rest for each hour. Dr. Chawla also stated that plaintiff could work for "6 hours at least/day." After an inquiry from Donnelley seeking clarification, Dr. Chawla provided another Return to Work Slip dated July 22, 2004. That slip described plaintiff's condition as radiculopathy/neuropathy DJD.

---

[1]

Plaintiff initially was on FMLA leave, which expired on February 27, 2004. Her eligibility for short-term disability benefits expired on May 26, 2004. Thereafter, she was approved for long-term disability benefits.

[2]

Because the handwriting is difficult to read, the slip appears to state either 10 or 30 minutes. For purposes of this opinion, I assume that it restricted the plaintiff to ten minutes standing.

Under the "comments" section, it stated: "2 hour work - 15 min. break"; sitting job only; 20 lbs weight lift restriction "for three months duration."

Donnelley has a "Transitional Duty Policy," whereby persons with work restrictions may be assigned for eighty-nine days to a temporary light-duty position performing some of the tasks of a Material Handler in the defendant's Inserting area. On the basis of Dr. Chawla's slip of July 19, 2004, plaintiff began working that day as an inserter.

According to Donnelley, material handlers must be able to lift up to sixty-five pounds to move pages from pallets to the inserting tables. In addition, material handlers are often "farmed out" to other areas of the plant when Inserting is slow or they are needed elsewhere.

Though material handlers are paid less than sewers, plaintiff asked in August, 2004, if she could be assigned to Inserting permanently. She was told that there were no openings.[3] Plaintiff renewed her inquiry about being permanently assigned to Inserting on November 17, 2004. She was informed that she could not perform all the work required of employees in that area in view of her restrictions. Plaintiff did not enquire about other options for permanent employment.

The last slip submitted from Dr.Chawla was dated September 30, 2004. It states, "continue work restriction as prior no new changes Followup Cleveland Clinic 1 month." *Id*.

In light of this last notice about plaintiff's condition, the defendant concluded that the plaintiff could not resume work as a sewer for an indefinite period. Because, according to the defendant, it had no available positions that could be done by someone with plaintiff's medical

---

[3] A few employees in Inserting are not required to lift more than twenty pounds and others are not required to lift more than fifty pounds because they were "grandfathered" into their existing positions when Donnelley eliminated their former  job classifications some years before plaintiff made her request to remain in Inserting permanently despite her restrictions.

restrictions, plaintiff resumed her leave of absence. Plaintiff's available leave ended on December 2, 2004; Pursuant to Donnelley's Leave of Absence Policy, the company terminated her on that date, because she had not worked as a sewer for a year and her doctor had not released her to return to that job.

Plaintiff contends that she could have continued to work as an inserter, and that positions which she could and should have filled, were open in that department. She claims that she was terminated because Donnelley unlawfully refused to accommodate her in light of her back condition and the doctor's restrictions.

In response, the defendant contends that plaintiff was, under the Transitional Duty Policy, performing only a portion of the duties expected of employees working in that department without medical restrictions.

In March, 2005, plaintiff began taking medical billing and coding classes at Marion Technical College, from which she received a certificate in June, 2006. She drove herself thirty-two miles three to five days per week for her classes. Since December 13, 2006, plaintiff has worked at Debt Recovery Solutions as a full-time collector.

Plaintiff dresses herself, though occasionally she needs help putting on her shoes and socks. She washes dishes, cooks, folds and sorts laundry, and shops. Plaintiff can vacuum and mop, though with some back pain. Dr. Chawla has continued the same work restrictions imposed shortly before defendant fired the plaintiff: namely, 20-pound lifting, sitting job only, fifteen minute break every two hours. Otherwise, her only physical limitation is that she can't do "very much bending."

Plaintiff asserts four causes of action against Donnelley: discrimination under the ADA and § 4112 by not accommodating her so that she could work despite her back impairment and

4

terminating her [Counts I, III] and terminating her in violation of the FMLA [Count II] and Ohio

public policy [Count IV]. Donnelley seeks summary judgment as to all four claims.

## Discussion

### 1. Disability Discrimination Claims

### A. Plaintiff is Not "Disabled"

A prima facie case of disability discrimination under the ADA requires proof that: 1) plaintiff

is "disabled," as that term is defined under the statute; 2) she is otherwise qualified to perform her

job, with or without reasonable accommodation; and 3) Donnelley either refused to make a

reasonable accommodation for her disability or fired her solely because of her disability. *See*

*Monette v. Elec. Data Sys. Corp.*, 90 F.3d 1173, 1178 (6th Cir. 1996).

If plaintiff establishes a *prima facie* case, Donnelley must articulate a legitimate

nondiscriminatory reason for its adverse employment action. Once it does, Plaintiff, who retains the

ultimate burden of proof, must present evidence that Donnelley's stated reason is a pretext masking

impermissible discrimination. *McDonnell Douglas Corp. v. Green*, 411 U.S. 792, 802 (1973); *Gantt*

*v. Wilson Sporting Goods Co.*, 143 F.3d 1042, 1048-49 (6th Cir. 1998).[4]

The ADA defines disability as "a physical or mental impairment that substantially limits one

or more of the major life activities." 42 U.S.C. §12102(2). This definition is not met merely on a

showing that the plaintiff is impaired to some extent due to a back condition: "Plainitff's bad back

alone does not qualify a person for ADA disability status." *Agnew v. Heat Treating Serv. of Am.*,

2005 Fed. App. 0974N , 2005 WL 3440432, at *5 (6th Cir. Dec. 14, 2005); *see also Adams v. Potter*,

---

[4]

Because claims under the Ohio disability discrimination statute are subject to the same analysis as claims under the ADA, *Adams v. SBC/Ameritech*, 2006 WL 2970450, at *3 (N.D. Ohio Oct. 13, 2006), I discuss only plaintiff's ADA claim.

193 Fed. Appx. 440, 444, 2006 Fed. App. 0608N (6th Cir. Aug. 22, 2006); *Humphrey v. City of Cleveland*, 2007 WL 397043, at *4 (N.D. Ohio Jan. 31, 2007).

To be "substantially limited" means that the individual, due to the condition, is either unable to perform, or is *significantly restricted* in her ability to perform, "a major life activity that the average person in the general population can perform." 29 C.F.R. §1630.2(j)(1)(I) (2007).

The severe restrictions from the impairment, moreover, must be permanent or long-term and affect "doing activities that are of central importance to most people's daily lives." *Toyota Motor Mfg. v. Williams*, 534 U.S. 184, 198 (2002).

A principal, but by no means the only problem with plaintiff's effort to make out a *prima facie* case that she is disabled under the ADA is that the factual basis for her claim comes almost entirely from her self-assessed and -described statement of her condition and its effects. The evidence from Dr. Chawa, which is the only objective, or nearly so, evidence in the record about the plaintiff's condition and its effects, is found in the excuse and return to work slips and an affidavit submitted with plaintiff's response to the summary judgment motion. [Doc. 38, Exh. B].

That affidavit states that the doctor has "treated Tammy Green in connection with her back impairment" and his "diagnosis with respect to Ms. Green's back is Radiculopathy due to degenerative disc disease and lumbrosacral neuritis and chronic pain." He reports that he "restricted her work, including during 2004 and thereafter, as follows: 20-pound weight lifting restriction; sitting job only and two hours of work–15 minute break." *Id*.

Dr. Chawa's affidavit describes "[s]ome of the major life activities which were substantially limited as a result of her back impairment during 2004 and thereafter included, but were not limited to, the following: .   .   . 1 no upper extremity use limitation 2 lower extremity use limited due to

Pain due to lumbrosacral neuritis 3 unable to lift [more than] 20 lbs using both hands, unable to lift 15 lbs from floor to waist 3 [sic] onehand carrying 14 lbs 5 occasional sitting, standing, bending, stooping, kneeling, climbing stairs, crawling and frequent walking." *Id*.

The objective record about plaintiff's condition is more remarkable for what it does not contain. There is no indication of the nature of Dr. Chawa's practice, whether he prescribed any treatment [aside from referring plaintiff to the Cleveland Clinic] or medications, or what the basis was for his assessments. There are no medical records of any examinations, tests (subjective or objective), diagnosis or prognosis from either him or the Cleveland Clinic. Aside from a reference to having a "nuecleoplasty" done and the fact that appointments may have been made, there is no indication that the Clinic did or prescribed anything for the plaintiff.

Rule 56(e) of the Federal Rule of Civil Procedure states that a party must offer "specific facts showing that there is a genuine issue for trial." Plaintiff fails to meet this standard. Everything that she presents to meet her burden of showing that she is disabled is conclusory: she says that her back condition keeps her from doing certain things, or always being able to do them, or doing them for more than a minimal amount of time. Her doctor's statements are the medical equivalent of her testimony – simply conclusions about the limitations resulting from her back impairment. There are no "specific facts" as required by Rule 56(e).

To be sure, the plaintiff's depiction of her limitations is more extensive than Dr. Chawa's assessment. This does not, however, suffice to show plaintiff is disabled. In *Cotter v. Ajilon Servs., Inc.*,  287 F.3d 593, 598 (6th Cir. 2002), the plaintiff, who suffered from colitis, claimed that that condition restricted his ability to perform manual tasks such as lifting, bending, standing and carrying things. The court stated, in response to the plaintiff's statements, that:

> Apart from this perfunctory statement, . . . [plaintiff] offered no evidence from which a reasonable jury could infer that his digestive ailment substantially limits these major life activities. As we have held, "[a] single conclusory statement about an alleged substantial limitation is not enough to avoid summary judgment sought by the employer." *Anderson v. Inland Paperboard & Packaging, Inc.*, 11 Fed.Appx. 432, 436 (6th Cir. 2001). *Cf. Penny v. United Parcel Service*, 128 F.3d 408, 415 (6th Cir.1997) (plaintiff's bare allegation of a walking impairment did not suffice to prove that the impairment rose to the level of a disability).

*Id.* at 598-99.

I conclude, accordingly, that plaintiff has failed to satisfy the requirements of Fed. R. Civ. P. 56(e), and judgment should be entered in Donnelley's favor on that basis alone.

There are other grounds for finding that the plaintiff – even if she had shown an adequate basis for her factual contentions about the effect of her back impairment – cannot prevail. While walking is a major life activity, *see, e.g., Toyota, supra*, 534 U.S. at 195, the degree of limitation described by the plaintiff [inability to walk for more than fifteen minutes] does not reach the level of a substantial impairment. *See Penny, supra*, 128 F.3d at 415 (moderate difficulty or pain experienced while walking or the need to walk slowly does not rise to the level of a disability).

Being restricted to lifting no more than twenty pounds likewise does not constitute a substantial limitation of life's activities. *Vass v. Riester & Thesmacher Co.*, 79 F. Supp. 2d 853, 861 (N.D. Ohio 2000). Driving is also not a major life activity. *Hayest v. Cleveland Clinic Found.*, 2006 WL 2993415, at *8 (N.D. Ohio Oct. 19, 2006); *see also Gerton v. Verizon S. Inc*., 145 Fed. Appx. 159, 166 (6th Cir. 2005) (inability to drive long distance is not a substantial limitation).

Moreover, plaintiff's assertion in her affidavit that she can only sit for fifteen minutes is inconsistent with her deposition testimony that she drove thirty-two miles to and from school, drives twenty minutes to work, and is employed as a debt collector. In light of Dr. Chawla's statements that

8

she can sit for one or two hours with fifteen minute breaks, any limitation on her ability to sit, even in combination with her other limitations, does not cause her to be disabled under the ADA.

Plaintiff's claims that she has "trouble" performing some tasks or that other tasks (e.g., vacuuming) cause her pain do not demonstrate that she is substantially restricted in the performance of these tasks as compared to the average person. *Amann v. Potter*, 105 Fed. Appx. 802, 806-07 (6th Cir. 2004).

### B. Donnelley Did Not Regard
### Plaintiff as Disabled

Alternatively, plaintiff claims that Donnelley's response to her excuse and return to work slips shows that it regarded her as disabled. To prevail on this contention, plaintiff must show that: 1) Donnelley mistakenly believed that she had a physical impairment that substantially limited a major life activity; or 2) Donnelley mistakenly believed that an actual, nonlimiting impairment substantially limited a major life activity. *Mahon v. Crowell*, 295 F.3d 585, 592 (6th Cir. 2002); *Daugherty v. Sajar Plastics, Inc*., 2006 WL 3228761, at *7 (N.D. Ohio Nov. 6, 2006).

The fact that Donnelley concluded, on receiving the notices from Dr. Chawla, that plaintiff could not, in light of the restrictions imposed by her doctor, perform her job as a sewer does not mean that, as a matter of law, Donnelley regarded her as disabled. *Cotter, supra*., 287 F.3d at 599 (employer did not regard employee as disabled simply because employer concluded that employee could not perform a particular job).

### C. Plaintiff Was Not Qualified Physically to Perform Her Job

Plaintiff cannot show, in light of Dr. Chawla's restrictions, that she was qualified [i.e. capable] of performing the sewer's job. Given the standing, walking and lifting requirements of that

position, there was no accommodation that could have enabled her to do the work in that position that Donnelley expected and needed.

To the extent that plaintiff asserts that she could have continued to perform the duties of materials handler with the accommodation that she not exceed her lifting restriction, her proof as to this element also fails. Being able to perform only a light duty job that incorporates different, and lesser exertional demands than those imposed on others in the same job is not the same as being qualified to perform one's job. *See Norsworthy v. Kroger Co.*, 2000 WL 32026, at *3 (6th Cir. 2000 Jan. 6, 2000) (plaintiff could not show she was qualified because she alleged that she could perform only a temporary light-duty job).

Plaintiff must show she could perform her regular job; there is no dispute that she could not do so. She is, accordingly, not a qualified individual with a disability under the ADA.

### D. Donnelley Did Not Fail to Accommodate Plaintiff.

Much of plaintiff's opposition to defendant's summary judgment motion focuses on her allegation that Donnelley did not fulfill its obligation under the ADA to accommodate her alleged disability by permitting her to remain in the Inserting department. In other words, plaintiff claims that because she was allowed to work there during the transitional period, Donnelley was obligated to let her do so past the ninety day limit in the Transitional Duty Policy.

Plaintiff has the burden of proposing an accommodation to her regular position and showing that the accommodation is objectively reasonable. *Monette v. Electrical Data Systems*, 90 F.3d 1173, 1183 (6th Cir. 1996); *Norsworthy, supra*, 2000 WL 32026, at *3. An employer is not required to "accommodate" an employee by creating a new job. *Thompson v. E.I. DuPont deNemours & Co.*, 70 Fed. Appx. 332, 338 (6th Cir. 2003) (Unreported decision); *Norsworthy*, 2000 WL 32026, at *3.

10

In any event, a plaintiff's request for accommodation via reassignment must be to a vacant position. *Thompson, supra*, 70 Fed. Appx. at 336-337.

Plaintiff's somewhat protracted and convoluted effort to show "comparables" is unavailing. First, there is no dispute that the transitional duty assignment was not permanent. It is likewise undisputed that no other employee was assigned to Inserting to perform only the limited duties that plaintiff had performed during her interlude in that department.

Those facts are not overcome by a showing that other employees, who were not working with restrictions, continued to be assigned under the material handler job classification to Inserting, doing the work that plaintiff was assigned to do. What matters is that they were able to perform the other duties – duties which plaintiff could not perform – expected of the material handlers.

### E. Donnelley's Reasons for Termination Were Not Pretextual

Donnelley states that it based its decision on its leave policy, whereby a person who does not return to a job within a one year period is fired. Its explanation is legitimate, as the Sixth Circuit has held that policies similar to Donnelley's do not violate the ADA. *Gantt, supra*, 143 F.3d at 1046.

Plaintiff cannot meet her burden of showing that Donnelley's explanation is a pretext – i.e., a dishonest explanation, offered to conceal its unlawful intent. *See Wilkins v. Eaton Corp.*, 790 F.2d 515, 523 (6th Cir.1986). This burden cannot be met merely by attacking the decision, *Hein v. All Am. Plywood Co., Inc.*, 232 F.3d 482, 489-90 (6th Cir. 2000), or disagreeing with it. *See Gantt, supra,* 143 F.3d at 1048-49. A court is simply not permitted to second guess the employer's business judgment. *Hedrick v. W. Reserve Care Sys.*, 355 F.3d 444, 462 (6th Cir. 2004).

Plaintiff has not shown that any other similarly situated individuals [i.e., persons placed on light duty in Inserting] were allowed, once their ninety-day term expired, to continue doing light

11

duty in that department. Nor has she shown that jobs existed elsewhere in the plant that she could perform despite her impairment and the restrictions imposed by Dr. Chawla. And she has presented no other evidence sufficient to persuade a trier of fact that Donnelley's explanation for its actions was pretextual.

### 2. FMLA Claim

Plaintiff cannot prevail on her claims that her discharge on December 2, 2004, occurred in retaliation for her exercise from December, 2003 through February, 2004, of her rights under the FMLA.

To make out a *prima facie* case for retaliation, plaintiff must show: 1) she exercised a protected right under the FMLA; 2) she was adversely affected by an employment decision; and 3) a causal link between her exercise of her rights and the adverse employment decision. *Skrjanc v. Great Lakes Power Service Co.*, 272 F.3d 309, 314 (6th Cir. 2001).

Plaintiff has not shown any basis on which a jury could find a nexus between her taking FMLA leave and the loss of her job. The temporal distance between the leave and her firing is simply too great to support an inference that it was more likely than not that a connection existed in the employer's mind between the two events. *See Smith v. Allstate Ins. Co.*, 2005 WL 1540221, at *14 (N.D. Ohio June 30, 2005) (no causal connection with time lag of seven months).

### 3. Public Policy Claim

Plaintiff's last claim is that Donnelley's actions violate Ohio public policy. To state a claim for wrongful discharge in violation of public policy, she must show: 1) a clear public policy existed (clarity element); 2) upholding her dismissal would jeopardize the public policy (jeopardy element); 3) the dismissal was motivated by conduct related to the public policy (causation element); and 4)

12

Donnelley had no overriding legitimate business justification for its actions (overriding justification element). *Wiles v. Medina Auto Parts*, 96 Ohio St. 3d 240, 242 (2002) (citing *Collins v. Rizkana*, 73 Ohio St. 3d 65, 67 (1995)). The first two elements are questions of law to be determined by the court. *Collins, supra*, 73 Ohio St. 3d at 69-70.

The "jeopardy" element looks to whether the law provides an "alternative means of promoting the particular public policy to be vindicated by a common-law wrongful-discharge claim." *Wiles, supra*, 96 Ohio St. 3d at 244. Under this analysis, "there is no need to recognize a common-law action for wrongful discharge if there already exists a statutory remedy that adequately protects society's interests." *Id.*

Because O.R.C. § 4112 entitles a prevailing party to an adequate remedy for claims of discriminatory termination, Ohio does not allow a common law claim for wrongful discharge. *Barlowe v. AAAA Int'l Driving School, Inc.*, 2003 WL 22429543, at *6-7 (Ohio Ct. App.). Plaintiff's fourth claim  specifically acknowledges that her wrongful discharge claim is based on the public policies included in the "Ohio handicap and disability statutes" [Doc. 1, ¶77]. Thus, she cannot maintain a separate claim based on the public policy of Ohio.

## Conclusion

In light of the foregoing, it is

ORDERED THAT defendant's motion for summary judgment [Doc. 30] be, and the same hereby is granted.

So ordered.


<u>s/James G. Carr</u>
James G. Carr

13

Chief Judge